ROBERT M. BEECHER
ATTORNEY AND COUNSELOR AT LAW
110 WALL STREET - ELEVENTH FLOOR
NEW YORK, NY 10005
1-(212)-709-8367

VOICE (24 HOURS) AND FAX
1-(908)-771-0095

E-MAIL: BEECHBOB@COMCAST.NET
CELL: 1-(908)-347-4185

Hon. Jack B. Weinstein
Senior United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

BY ECF and FACSIMILE

November 6, 2009

RE: United States v. CELESTINO ORTA
08 Cr. 49 (JBW)

Dear Judge Weinstein,

As you know, my client, CELESTINO ORTA, will be coming before the Court on Friday, November 13, 2009 at 10:00 A.M. for sentencing, having been found guilty, on August 20, 2009 after a jury trial, of the only count in the indictment which charged him with Bribery, in Violation of Title 18 U.S.C. 661.

This letter is submitted on Mr. ORTA's behalf and addresses those issues we believe are relevant and important to assisting Your Honor in fashioning an appropriate sentence which serves the interests of justice and accommodates the sentencing purposes set forth in Title 18 United States Code §35(a) in accord with *United States v. Booker*, and *United States v. Fanfan*, 543 U.S. 220, 160 L.Ed.2d 621, 125 S.Ct. 738 (U.S. Sup. Ct. 2005).

In addition, pursuant to U.S.S.G. §6A1.3, p.s. and Rule 32(a)(1), Fed.R.Crim.P., it addresses certain objections — there are no substantive objections — regarding the PRESENTENCE INVESTIGATION REPORT and the ADDENDUM TO THE PRESENTENCE REPORT prepared by the United States Department of Probation (U.S.

Probation Officer Holly S. Kaplan), in order to assist the Court in determining the appropriate sentence under the provisions of the Sentencing Reform Act of 1984 and the Guidelines issued under it by the United States Sentencing Commission pursuant to Title 28 United States Code §994(a). For the purpose of this letter the Presentence Investigation Report will be referred to as the Report. THE ADDENDUM TO THE PRESENTENCE REPORT will be referred to as the Addendum.

SUMMARY OF OBJECTIONS AND DEPARTURE REQUESTS

The following specific objections to the Report and the Addendum will be amplified below:

- Mr. ORTA has had an opportunity to review, at length, the entire Report and the October 15, 2009 Addendum with the undersigned and there are no substantive objections to the Report. However, there are two factual corrections to the Addendum.

- There are no departure requests, however, Mr. ORTA urges Your Honor, after determining the applicable advisory Guidelines range, to impose a sentence below the advisory Guidelines range which comports with the parsimony requirements and the sentencing factors of 18 U.S.C. §3553(a).

BACKGROUND

There are no objections, to the factual information in the Report pertaining to the defendant's basic biographical information, the case chronology, and the factual background set forth in the Report **Parts A, B, C, D, & E** through paragraph 91. In the interest of brevity, they are incorporated by reference herein. This Report was prepared in anticipation of sentencing following the entry of Mr. ORTA's original guilty plea on on May 8, 2008 before Magistrate Judge Viktor V. Pohorelsky.

The Addendum was prepared post-trial and provides Your Honor with the requisite updated information and a revised Guidelines offense level which does not include the original reduction of 3 levels for acceptance of responsibility. Thus, the original Guidelines calculation of a 24-30 month imprisonment range is modified in the Addendum in paragraph 83 to reflect Mr. ORTA's decision to go to trial rather than retain his original guilty plea, thus eliminating the acceptance of responsibility adjustment. This results in a advisory Guidelines sentencing range of 33-41 months imprisonment.

The Addendum is correct in all other respects but for two factual errors regarding Mr. ORTA's family:

The Addendum, at page 4, includes two paragraphs numbered 41. Both of these paragraphs erroneously describe individuals — offspring or relations — who have no relationship to Mr. ORTA. Attempts to advise Ms. Kaplan of the error have been unsuccessful. It appears likely that these paragraphs relate to another individual in officer Kaplan's case inventory, and that they were inserted into Mr. ORTA's Addendum inadvertently. The Addendum ought to be corrected accordingly.

Your Honor presided over the brief trial of this matter and is therefore fully informed as to the facts and circumstances of the offense and Mr. ORTA's participation. As noted in the introductory paragraph of this memorandum, he was found guilty of the only count in the indictment regarding a scheme to bribe an official of the New York City Department of Environmental Protection's Environmental Control Board.

There was substantial testimony from Mr. ORTA's attending psychologist, Antonio Ortega, Psy.D., during the guilt phase of the trial, regarding Mr. ORTA's mental condition and treatment for various psychological disorders, many of them extending back to his childhood. While Dr. Mills, the Government's expert, did not find that Mr. ORTA's deficits undermined his capacity to form requisite *mens rea*, there was no disagreement that Mr. ORTA's emotional problems began in his early childhood.

SENTENCING CONSIDERATIONS

The landscape of federal sentencing has been dramatically changed by the Supreme Court's decision in *United States v. Booker*, and *United States v. Fanfan*, 543 U.S. 220, 125 S.Ct. 738 (2005), which held that the mandatory nature of the United States Sentencing Guidelines violated the Sixth Amendment. Recently the Court clarified and explained in detail the mechanics of *Booker*'s remedial ruling in two cases: *Gall v. United States*, 552 U.S. 586, 128 S. Ct. 586 (2007); and *Kimbrough v. United States*, 552 U.S. 558, 128 S. Ct. 558 (2007). District court sentencing judges are to consider the Guidelines as advisory and in tandem with the purposes of criminal sentencing as set forth in 18 U.S.C. §3553(a):

The court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider —

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines...;

(5) any pertinent policy statement —

(A) issued by the Sentencing Commission pursuant to section 994(a)(2)

of title 28, United States Code, subject to any amendments made to such policy statements by act of Congress...

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

The Second Circuit's approved sentencing protocol closely mirrors the Supreme Court's instructions in *Gall* and *Kimbrough*.[1]

A first step in post-*Booker* sentencing is to determine the applicable Guideline range after making such findings of fact as are necessary, as required by 18 U.S.C. §3553(a)(4). *United States v. Crosby,* 397 F.3d 103, 112 (2d Cir. 2005). Then a court is to consider policy statements issued by the Sentencing Commission, as required §3553(a)(5). Id. This applicable Guideline range is determined in the same manner as before *Booker*. Id. Once this Guideline range is determined, the court has the duty to "consider" it along with the other factors listed in §3553(a). Id. at 112-13. See also *Simon v. United States,* 361 F.Supp.2d 35 (E.D.N.Y. 2005).

The Second Circuit continues to emphasize district court sentencing which is reliant on the §3553(a) factors while considering the Guidelines in tandem. *United States v. Castillo,* 460 F.3d 337, 354 (2d Cir. 2006); *United States v. Ministro-Tapia,* 470 F.3d 137 (2d Cir.

---

1. As we explained in *Rita*, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See 551 U. S., at ___. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. See id., at ___. He must make an individualized assessment based on the facts presented. *Gall,* 2007 WL 4292116, at*7, 552 U.S. 586 (2007); and *Kimbrough,* 2007 WL 4292040 at*10, 552 U.S. 558 (2007) [while §3553(a) requires the sentencing court to give due consideration to the Guidelines, *Booker* allows the sentencing to fashion the sentence in light of other statutory considerations.]

2006); *United States v. Williams*, 476 F.3d 468 (2d Cir. 2007); *United States v. Rattoballi*, 452 F.3d 127, 131 (2d Cir. 2006); *United States v. Jones*, 531 F.3d 163 (2d Cir. 2008):

> As *Gall* emphasized, district courts have two distinct institutional advantages over appellate courts in determining what sentence best achieves the purposes of § 3553(a) in a given case: (1) district courts impose scores of sentences each year, and (2) a district judge is in a superior position to find facts relevant to sentencing and to determine their import under § 3553(a). See Id. at 597-98. In the latter respect, district courts hear all the evidence relevant to sentencing, make credibility determinations, and interact directly with the defendant. See Id. at 597. In the process, they "gain[] insights not conveyed by the record" that are often critical to identifying a just sentence. Id. (internal quotation marks omitted). *Jones* Id. at p. 170, citing *Gall v. United States,* 128 S. Ct. 586, 597.

And the Circuit's most recent — and perhaps most important explication — to date, *United States v. Cavera*, 550 F.3d 180, (2d Cir. 2008), eliminates any doubt as to the paramount role district judges play in making individualized sentencing assessments in accord with §3553 (a) factors:

> A district court may not presume that a Guideline sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and the defense. District judges are, as a result, generally free to impose sentences outside the recommended range. When they do so, however, they "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." [*Gall*, 128 S.Ct.] at 597. In this way, the district court reaches an informed and individualized judgment in each case as to what is "sufficient, but not greater than necessary" to fulfill the purposes of sentencing. 18 U.S.C. § 3553(a). *Cavera*, Id. at 189.

Indeed, as Justice Stevens noted in *Rita v. United States*, 551 U. S. ____, 127 S.Ct. 2456 (2007) "…*Booker's* standard of review allows, indeed, requires district judges to consider all of the factors listed in §3553(a) and to apply them to the individual defendants before them." And the Second Circuit in *Cavera* concluded that:

> When all is said and done though, once we are sure that the sentence resulted from the reasoned exercise of discretion, we must defer heavily to the expertise of district judges. *Cavera*, Id. at 193.
>
> [And]…district court decisions, if adequately explained, should be reviewed especially deferentially. *Cavera*, Id. at 192.

Appellate review of a district court's sentencing is thus a "…circumspect form of review[.]" *Cavera*, Id. at 193.

It is interesting to note that some years ago, Judge Marvin E. Frankel of the United States District Court for the Southern District of New York, summarized the principal purposes served by criminal sentences, as enunciated by the courts:

> *Retribution*, the exaction of payment — "an eye for an eye."
>
> *Deterrence*, which may be "general" (i.e., discouraging others than the defendant from committing the wrong), "special" (discouraging the specific defendant from doing it again), or both.
>
> *Denunciation*, or condemnation, as a symbol of distinctively criminal "guilt," as an affirmation and re-enforcement of moral standards, and as reassurance to the law abiding.
>
> *Incapacitation*, during the period of confinement.

> *Rehabilitation* or *Reformation* of the offender. [Frankel, *Criminal Sentences: Law Without Order*, 106 (1973)]

This summary of sentencing objectives was closely mirrored eleven years later by §3553 and the Sentencing Reform Act of 1984 (Title II of the Comprehensive Crime Control Act of 1984) which provided for the development of Guidelines that further the basic purposes of criminal punishment: deterrence, incapacitation, just punishment, and rehabilitation. U.S.S.G. Ch.1, Part A, 2, The Statutory Mission.

It is respectfully suggested that applying these statutory principles and utilizing the common sense approach suggested above to CELESTINO ORTA's circumstances should yield a sentence consistent with those principles, and the advisory Guidelines range that Your Honor must consider together with the section 3553 factors. It is respectfully suggested that, given Mr. ORTA's particular circumstances, a sentence below the advisory Guidelines range is appropriate.

In seeking a lesser sentence at variance with the advisory Guidelines range we do not request a Guidelines downward "departure" which commonly refers to… "the imposition of a sentence outside the advisory range or an assignment of a criminal history category different than the otherwise applicable category . . . result[ing] from the district court's application of a particular Guidelines provision, such as § 4A1.3 or § 5 part K." *United States v. Grams*, 566 F.3d 683, 686 (6th Cir. 2009). "A 'variance' refers to the selection of a sentence outside of the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of § 3553(a)." *Id.* at 686-87. "While the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance, the concepts are distinct." *Id.* at 687 as referred to in note 2 *U.S. v. Simpson*, – F. App'x – (6th Cir. 2009).

"[V]ariances from Guidelines ranges that a District Court may find justified under the sentencing factors set forth in 18 U.S.C. § 3553(a)" include a *much broader* range of discretionary decision making" than departures. *Simpson*, Id., quoting from *United*

*States v. Stephans*, 549 F.3d 459, 466-467 (6th Cir. 2008) (emphasis added); *Irizarry v. United States*, 128 S.Ct. 2198, 2002-03 (2008).

THE STATUTORY [(18 U.S.C. 3553(a)] FACTORS AS THEY RELATE TO MR. ORTA

(1) *The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant*

As noted earlier, the Report, as well as the trial testimony, sets forth in detail the nature and circumstances of the instant offense and the narrative is accepted without objection and incorporated by reference herein. Mr. ORTA thoroughly understands the seriousness of the offense to which he originally pled guilty and for which he was ultimately found guilty after trial.

Context is so important in a case such as Mr. ORTA's. It should not be forgotten that, but for a fleeting mention by Mr. ORTA regarding his willingness to provide Yankee tickets for Ms. Tracy Peeler, the Environmental Control Board's Administrative Law judge, it was undisputed that there was never a *quid pro quo* expected during the pendency of the proceedings before Ms. Peeler. Mr. ORTA never suggested as much, did not contact Ms. Peeler's office, and essentially went about his life. Nothing further was ever mentioned or suggested by Mr. ORTA.

It was not until two months later when, virtually out of the blue, Mr. ORTA was contacted by undercover operatives of the Environmental Control Board, the result of Ms. Peeler's memorandum to the New York City Department of Investigation regarding the Yankee ticket reference. We all know where it went from there, and there was little doubt that Mr. ORTA was a willing to suggest the bribery scheme. And this eagerness to initiate such a scheme must also be viewed in the context of Mr. ORTA's background, not to excuse it, but to assist in explaining his obvious need for self aggrandizement.

In addition to the Report's **PART C. OFFENDER CHARACTERISTICS** paragraphs 38 through 81, the Addendum's supplemental details, which are, with the exception of the changes set forth above, incorporated by reference herein, trial testimony shed light on a troubled man's personal history. There can be no doubt that his emotional and mental health deficits contributed to his errant behavior.

Dr. Ortega's testimony summarized the course of his treatment and that he examined Mr. ORTA's psychological evaluations and assessments which dated back to 1985 when, as a middle school student at P.S. 12 in the Bronx, the New York City Board of Education, Division of Special Education classified Mr. ORTA as: emotionally disturbed, in need of medications for convulsions and anxiety (Dilantin and Mellaril); counseling three times weekly; and placement in Special Education classes.

Dr. Ortega also reviewed the records of the ACCESS Program at Brooklyn Psychiatric Centers, Inc., to which Mr. ORTA was referred for weekly counseling as a condition of his bail. The ACCESS evaluation described Mr. ORTA as essentially illiterate with a pervasive developmental disability; intellectual function…of a young child; poor insight and judgment. The DSM IV (*Diagnostic and Statistical Manual of Mental Disorders - Fourth Edition*) diagnoses were as follows: Bipolar 1 disorder, ADHD, Panic Disorder, Panic Disorder with Agoraphobia, Mood Disorder Nos (not otherwise specified), Intermittent Explosive Disorder, Psychosis, mood disorder, anxiety and lack of work and socialization skills.

Additionally, the ACCESS evaluation found, consistent with Dr. Ortega's findings, that Mr. Orta becomes excited, like a young child when talking about his tendency to act out fantasy and wish-fulfilling ideas that reinforce his experience of being a powerful man of great wealth — fantasies he acts out as if they were reality, despite the fact that he is aware that he slips into this unrealistic fantasy.

During her presentence investigation, (Report at 14-15), Ms. Kaplan verified that between the ages of six and fifteen, Mr. Orta received psychological counseling at

Flower Fifth Avenue Hospital for bipolar disorder, panic disorder with agoraphobia, and attention deficit hyperactivity disorder (ADHD). During this time period he was medicated with Paliperidone 30 mg. daily.

What is also abundantly clear as well is Mr. ORTA's stable and enduring family ties, his devotion to his daughter Natalia and sisters Miriam and Leanna, both of who testified regarding his sad childhood. There is no question that they remain supportive. Indeed, Your Honor will recall that Miriam was Mr. ORTA's court ordered caretaker during the period of his pretrial release from March 23, 2009 through the end of the trial on August 20, 2009.

It is anticipated that, at sentencing, Mr. ORTA's family will, work schedules permitting, be present to demonstrate to the Court their resolute support and confidence in CELESTINO. This is often unusual in a criminal sentencing setting and thus noteworthy, for an integrated family support network bodes well for Mr. ORTA's future.

(2) *The Need for the Sentence Imposed*

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

As noted above, Mr. ORTA does not shrink from the responsibility he owes regarding the instant offense.

It is not disputed that punishment plays an important role in deterring crime, however, the nature of that relationship is not so readily apparent. There is a significant downside to what has been called the American experiment in mass incarceration. And while prisoners are obviously not committing crime in their communities while they are

incarcerated, they are also not functioning as parents, workers, consumers, or neighbors. *United States v. Haynes,* 06 Cr. 10328, Dist. Mass. Gertner, D.J. June 3, 2008 Sent. Memo at 13, citing the scholar Jeremy Travis's analysis in But They All Come Back, 119 (2005) that there were approximately 1.5 million children in the U.S. who had a parent in prison.

It is difficult to imagine how a prolonged period of incarceration would promote the family stability we profess to encourage as a society. One could, and should, fairly ask:

> At what point does an advisory Guidelines sentencing range so adversely impact the innocents in a defendant's life that it becomes unnecessarily harsh and require appropriate mitigation in view of those unintended consequences?

In considering the need to protect the public from future crimes of Mr. ORTA, continued therapy and the continued support of his loyal family as mentioned above, a minimal sentence of confinement would satisfy these §3553(a) statutory factors.

(3) *The Kinds of Sentences Available*

Mr. ORTA will surely serve some period of imprisonment, undoubtedly followed by a period of supervised release with rigid post release conditions, not unlike those conditions imposed on probationers. It is not insignificant that in *Gall* 595-96, 599 (2007), the Supreme Court reminded that:

> "probationers do not enjoy the absolute liberty to which every citizen is entitled" and that a probationary term is, in and of itself, a significant punishment, and, further, that, in certain cases (like Gall's), "a sentence of imprisonment may work to promote, not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account

circumstances involved in sentencing."

Your Honor is also aware of the fact the Bronx County has charged Mr. ORTA with Grand Larceny. I have been informed by Assistant District Attorney Richard Baker and his assigned counsel, Ken Murphy, that a plea which would result in no more than a year imprisonment to follow whatever sentence You Honor imposes, is on the table in the Bronx. And so it is clear that all parties understand Mr. ORTA's complex issues and the fact that prolonged incarceration will not likely serve a useful purpose.

In view of the information provided to the Court regarding Mr. ORTA's financial condition as contained in paragraphs 71-81 of the Report and the supplemental information contained in the Addendum, it is respectfully submitted that Mr. ORTA is unable to pay any fine, and is not likely to become able to pay. U.S.S.G. §5E1.2(a). The Report, in paragraph 81 at page 20 concurs.

It is therefore requested that the Court make findings in accord with the facts set forth in the Report and waive the imposition of any fine. *United States v. Corace*, 146 F.3d 51, (2d Cir. 1998); *United States v. Rafferty*, 911 F.2d 227, (9th Cir. 1990).

## SUMMARY AND CONCLUSIONS

Mr. ORTA's personal history is sad indeed. What emerged at trial was the portrait of a man belittled in childhood and challenged as an adult. Eager to amount to something and prove that he was worthy, he chose the wrong path.

It is respectfully submitted that, in following the Supreme Court's *Booker/Fanfan* directive to fashion a reasonable sentence in light of the §3553(a) factors and the Government's §5K1.1 submission, Your Honor will agree that the advisory Guidelines range in this case is unreasonably harsh, indeed counterproductive, and impose a sentence sufficient, but not greater than necessary to comply with the statutory objectives and which comports with the ends of justice.

A sentence below the advisory Guidelines range is such a sentence.

Very truly yours,

/s/

Robert M. Beecher
Attorney for CELESTINO ORTA